## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**SHERYL TAYLOR,**

    **Plaintiff,**

**OOMA, Inc.**

    **Defendant.**

**CASE NO. 5:18-cv-00071-JSM-PRL**

## MOTION REQUESTING COURT TAKE JUDICIAL NOTICE OF THE CENTRAL DISTRICT OF CALIFORNIA'S, SOUTHERN DIVISION "ORDER DENYING DEFENDANTS MOTION TO COMPEL ARBITRATION"
### and
## MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(B)
### and
## SET ASIDE ORDER TO COMPEL ARBITRATION
### or in the alternate
## TRANSFER CASE TO THE CALIFORNIA FEDERAL DISTRICT COURT BASED ON THE DEFENDANT'S PHYSICAL LOCATION

NOW COMES the Plaintiff, Sheryl Taylor (AKA "Sheryl Holly-Taylor), *Pro Se*, and submits her Motion Requesting Court Take Judicial Notice Of The Central District Of California's, Southern Division "Order Denying Defendants Motion To Compel Arbitration" and Motion For Relief Under Federal Rule Of Civil Procedure 60(B) and Set Aside Order To Compel Arbitration or in the alternate Transfer Case To The California Federal District Court Based On The Defendant's Physical Location, alleging as follows:

### I.    GENERAL HIGHLIGHT

1.    That at all times relevant herein, and on or about February 12, 2018, by and through her attorney, Jon Paul Dubbeld, Plaintiff filed her complaint against the Defendant.

2.    Plaintiff alleged, Defendant was guilty of violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq ("TCPA"), that being by continually contacting the Plaintiff via "automated calling system", in attempt to collect an alleged debt.

3.      That at all times relevant herein, and on or about June 27, 2018, Defendant's filed a motion to <u>compel arbitration</u>, arguing this court lacked jurisdiction, pursuant to Defendants "<u>arbitration clause</u>" contained within their "terms of service".

4.      July 9, 2018, this court entered an order, granting Defendants motion to compel arbitration.

## II.   THIS COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER THIS PENDING CASE

5.      Plaintiff asks this Court to take judicial notice of the United States District Court, Central District Of California Southern Division, **NGHIEM v. DICK'S SPORTING**, 222 F.Supp.3d 805 (2016).(This a TCPA violation, wherefore the Court DENIED the Defendant's motion to compel arbitration based on the Terms of use arbitration clause)(See Attached Court Order)

6.      The Court looked at two legal standards:

A) Actual Knowledge

B) Constructive Knowledge/Inquiry Notice

## A) ACTUAL KNOWLEDGE

7.      The Court held **"actual knowledge"** is not something to be **"safely assumed,"** as Defendants would have it, based on a plaintiff's occupation. Instead, Defendants were required to put forth **"evidence"** that Plaintiff had **"actual knowledge of the agreement"** at issue i.e. "arbitration agreement".

8.      Plaintiff argues, she "Sheryl Holly-Taylor" **did not** have any knowledge of aforesaid arbitration agreement contained in the Defendant's "terms of use", do to the fact she never read said terms of service.

9.      Plaintiff argues, her husband signed her up for Ooma service, and **never informed** her of aforesaid "arbitration agreement".

10.     Plaintiff asserts, the Defendant's failed to offer any **"evidence"** the Plaintiff had any "actual" knowledge of aforesaid arbitration agreement.

2

11.     Plaintiff asserts, based on these facts, **she has not satisfied** the first legal prong,

that being she has any "actual knowledge" of aforesaid "arbitration agreement" in question.

## B) <u>CONSTRUCTIVE KNOWLEDGE/INQUIRY NOTICE</u>

12.     The Court held, where a website makes its terms of use available via a conspicuous

hyperlink on every page of the website but otherwise provides no notice to users, nor prompts

them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink

to relevant buttons users must click on—**without more—is insufficient to give rise to

constructive notice.**

13.     Plaintiff asserts, the Defendant's "Terms of use" is exactly as described above,



14.     Plaintiff asserts, you have to **"scroll"** all the way to the **"bottom"** of the webpage

to **even locate** the "Terms of use" link.

15.     The Ninth Circuit Federal Appellate Court concluded, the proximity or

conspicuousness of [a] hyperlink alone is not enough to give rise to "constructive notice." (citing

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) *Id.* at 1178–79.

> "where a website makes its terms of use available via a
> conspicuous hyperlink on every page of the website but otherwise
> provides no notice to users nor prompts them to take any
> affirmative action to demonstrate assent, even close proximity of
> the hyperlink to relevant buttons users must click on—without
> more—is insufficient to give rise to constructive notice."

16.     Plaintiff asserts, even if the Defendant's website required new users to "click" they agree to the "Terms of use", **Plaintiff never personally "clicked"** on any agreement.

17.     Plaintiff asserts, "clicking" you agree, is not the same thing as to "actually" reading the "Terms of use" in question, therefore, even if the Plaintiff "clicked" she agreed to the aforesaid "Terms of use", (which she does not concede), the Defendants have failed to offer any evidence the Plaintiff **actually read** aforesaid terms of service in question.

18.     Plaintiff asserts, the Defendants have offered no evidence to support aforesaid arbitration agreement is **automatically** viewable **"prior"** to clicking any terms of service "agreement button" displayed.

19.     Plaintiff asserts, based on these facts, **she has not satisfied** the second legal prong, that being she had any "Constructive Knowledge/Inquiry Notice", of aforesaid arbitration agreement in question.

20.     Plaintiff asserts, based on the above facts, this Court **does have** proper subject matter jurisdiction over this pending matter.

## III.    IF THIS COURT REFUSE TO TAKE JUDICIAL NOTICE OF AFORESAID CALIFORNIA DISTRICT COURT RULING, AND REFUSES TO GRANT PLAINTIFF'S REQUEST TO SET ASIDE THIS COURTS ORDER TO COMPEL ARBITRATION, THIS COURT SHOULD TRANSFER THIS CASE TO THE CALIFORNIA FEDERAL DISTRICT COURT, HAVING SUBJECT MATTER JURISDICTION OVER THE DEFENDANT'S PHYSICAL LOCATION.

21.     Plaintiff asserts, the Defendant is physically based in Sunnyvale, CA, and therefore the multiple TCPA violations committed by the Defendant's, were **"initiated"** in California and ended in Florida, where Plaintiff resides.

22.     Plaintiff asserts, there is actually **"dual"** subject matter jurisdiction in this case, that being where the **Defendant initiated** aforesaid TCPA violations, and where the calls ended up, that being where the Plaintiff resides, that being Florida.

23.     Plaintiff asserts, she has the legal right to file aforesaid TCPA violations in either federal jurisdiction, that being Florida and/or California.

4

24.    Plaintiff asserts, in the event this Court refuses to set aside its order to compel arbitration, in the interest of justice, this Court should transfer this matter to the proper California District Court having subject matter jurisdiction over the Defendant's physical location.

## PRAYER FOR RELIEF

**WHEREFORE,** Sheryl Taylor, prays this Court grant her Motion For Relief Under Federal Rule Of Civil Procedure 60(B) and Set Aside this Courts Order To Compel Arbitration or in the alternate, transfer this case to the proper California Federal District Court.

## CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this petition:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully Submitted,

Date: <u>November 6, 2019</u>

Sheryl Holly-Taylor
Po Box 1
Ocklawaha, Fl 32183

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Motion Requesting Court Take Judicial Notice Of The Central District Of California's, Southern Division "Order Denying Defendants Motion To Compel Arbitration" and Motion For Relief Under Federal Rule Of Civil Procedure 60(B) and Set Aside Order To Compel Arbitration or in the alternate Transfer Case To The California Federal District Court Based On The Defendant's Physical Location, has been placed in the US Mail postal service with the correct amount of postage addressed to the Defendants attorney of record, that being:

Christina Guerola Sarchio
Dechert, LLP
1900 K St NW
Washington, DC 20006-1110

Date: <u>November 6, 2019</u>

Sheryl Holly-Taylor
Po Box 1
Ocklawaha, Fl 32183

6

# ATTACHMENT

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                **SOUTHERN DIVISION**

11

12                                      **Case No.: SACV 16-00097-CJC(DFMx)**

13 **PHILLIP NGHIEM,**

14

15            **Plaintiff,**                           **ORDER DENYING DEFENDANTS'**

16        **v.**                                 **MOTION TO COMPEL**
                                            **ARBITRATION**

17 **DICK'S SPORTING GOODS, INC. and**

18 **ZETA INTERACTIVE**
**CORPORATION,**

19

20            **Defendants.**

21

22

23

24 **I. INTRODUCTION**

25

26       Plaintiff Phillip Nghiem brings this action against Defendants Dick's Sporting

27 Goods, Inc. ("DSG") and Zeta Interactive Corporation ("Zeta") for violations of the

28 Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. (*See* Dkt. 1

1  ["Compl."].) Before the Court is DSG and Zeta's motion to compel arbitration. For the
2  following reasons, the motion is DENIED.[1]

3

4  **II. BACKGROUND**

5

6      The Complaint alleges that DSG administers a marketing program centered on
7  what they call "mobile alerts"—text messages sent to subscribers. (Compl. ¶ 17.)
8  Consumers can sign up for mobile alerts on DSG's website or by sending a text message
9  with the word "JOIN" to a number associated with DSG, called a "short code." (*Id.*) On
10  May 4, 2015, Plaintiff enrolled in DSG's mobile alert program by texting the word
11  "JOIN" to DSG's short code. (*Id.* ¶ 21.) Thereafter, on December 6, 2015, Plaintiff
12  texted the word "Stop" to that same short code, indicating that he no longer wished to
13  receive mobile alerts from DSG. (*Id.* ¶ 22.) DSG sent Plaintiff a text message indicating
14  that he had unsubscribed and would no longer receive mobile alerts. (*Id.*)

15

16      Despite this assurance, the Complaint alleges, DSG continued to send Plaintiff text
17  messages, including on at least eight particular occasions between December 11, 2015
18  and January 22, 2016. (*Id.* ¶ 24.) Each of the eight messages was sent, Plaintiff says, by
19  an automatic telephone dialing system after Plaintiff revoked his consent, in violation of
20  the TCPA. (*Id.* ¶¶ 23–24.) The Complaint seeks statutory damages, treble damages,
21  attorney's fees, and an order certifying a class. (*See id.* at 9.)

22

23      On June 13, 2016, Defendants moved to compel arbitration, arguing that Plaintiff
24  was on notice of the Terms of Use on DSG's website, which contain an arbitration
25  agreement Defendants say cover the TCPA claims at issue. Plaintiff insists that he was

26

27  ―――――――――――――

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate
28  for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set
for July 11, 2016 at 1:30 p.m. is hereby vacated and off calendar.

1 unaware of the arbitration agreement and had no reason to know of it. And even if he did
2 agree to an arbitration agreement, Plaintiff says, the agreement did not cover TCPA
3 claims, and the agreement cannot be enforced by third parties like Zeta.

4

5 **III. DISCUSSION**

6

7 The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "requires federal
8 district courts to stay judicial proceedings and compel arbitration of claims covered by a
9 written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble, Inc.*, 763
10 F.3d 1171, 1175 (9th Cir. 2014). The FAA reflects both a "liberal federal policy favoring
11 arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T*
12 *Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); see also *Circuit City Stores,*
13 *Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration
14 agreements on equal footing with other contracts, but also established a federal policy in
15 favor of arbitration." (internal citation omitted)). The district court's role on a motion to
16 compel arbitration is simply to determine whether a valid arbitration agreement exists and
17 whether that agreement encompasses the claims at issue. *Chiron Corp. v. Ortho*
18 *Diagnostic Sys.*, 207 F.3d 1126, 1131 (9th Cir. 2000). "[A]ny doubts concerning the
19 scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*
20 *Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–24 (1983).

21

22 The arbitration agreement at issue here is contained within the Terms of Use that
23 govern visitors to DSG's website. The Terms of Use constitute what is known as a
24 "browsewrap agreement." As the Ninth Circuit has explained,

25

26 Contracts formed on the Internet come primarily in two flavors: "clickwrap"
(or "click-through") agreements, in which website users are required to click
27 on an "agree" box after being presented with a list of terms and conditions of
use; and "browsewrap" agreements, where a website's terms and conditions
28

-3-

1   of use are generally posted on the website via a hyperlink at the bottom of
2   the screen.

3   *Nguyen*, 763 F.3d at 1175–76.  Browsewrap agreements "do[] not require the user to
4   manifest assent to the terms and conditions [of a website] expressly."  *Hines v.*
5   *Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366–67 (E.D.N.Y. 2009).  Instead, the
6   agreements purport to bind users simply by their existence, no matter whether the user
7   has actually viewed them.  *See Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013
8   WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013) ("The defining feature of browsewrap
9   agreements is that the user can continue to use the website or its services without visiting
10  the page hosting the browsewrap agreement or even knowing that such a webpage
11  exists.").

12

13   Because of this lack of assent on the part of consumers, courts enforce browsewrap
14  agreements with "reluctance," *Nguyen*, 763 F.3d at 1178, and will generally only do so
15  when a consumer has "actual or constructive knowledge of a website's terms and
16  conditions," *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill.
17  2011).  In this case, Defendants argue that Plaintiff *both* had actual knowledge of, and
18  constructive knowledge of, DSG's Terms of Use.

19

20   **A.  Actual Knowledge**

21

22   Plaintiff avers in a declaration that he did not "investigate, 'carefully' or otherwise,
23  DSG's website, terms of use, privacy policy, arbitration agreement, or class action waiver
24  prior to joining DSG's mobile alerts program," that he "did not read or know about
25  DSG's arbitration agreement," and that he only learned of that agreement when his
26  counsel told him about it during this litigation. (Dkt. 50-1 ["Nghiem Decl."] ¶ 9.) He
27  goes on to insist that he never "thought of" arbitration agreements when enrolling in
28  DSG's program and that DSG never presented any arbitration agreement to him. (*Id.*

1 ¶ 10.) Defendants argue that this is false because Plaintiff is in fact a lawyer whose
2 former firm routinely handles TCPA cases, including TCPA cases against DSG and its
3 affiliates. (Dkt. 47-5 ["Baran Decl."] ¶ 3 (describing five demand letters sent by
4 Plaintiff's former law firm to DSG and its subsidiary, Golf Galaxy, between March 10,
5 2015 and November 4, 2015).) As such, Defendants say, Plaintiff can be expected to
6 have been familiar with DSG's arbitration agreement and have been fully aware of it
7 when he enrolled in the mobile alerts program. (*See* Dkt. 47 ["Mot."] at 7 ("One can
8 safely assume that Plaintiff and his direct supervising attorneys exhaustively reviewed
9 DSG's website [in connection with prior demand letters].")). Defendants also provide
10 evidence that Plaintiff enrolled in a number of text messaging programs in a short period
11 of time—"fishing," Defendants say, for a TCPA lawsuit. (*See* Dkt. 47-2 ["Meyer
12 Decl."].) For his part, Plaintiff declares that he "never worked on any matter, including
13 any TCPA matter, involving DSG," and that while at his former firm, he "did not litigate
14 as an attorney the enforceability of an arbitration clause in [any type of] matter, TCPA or
15 otherwise." (Nghiem Decl. ¶ 15.)

16

17 These facts are insufficient to permit the Court to infer actual knowledge of the
18 Terms of Use on Plaintiff's part. To be sure, as an attorney who sometimes litigates
19 TCPA claims, Plaintiff surely has a greater level of understanding of the significance and
20 prevalence of arbitration agreements. And Plaintiff *did* sign up for a significant number
21 of mobile alerts programs within a few months. Nonetheless, actual knowledge is not
22 something to be "safely assumed," as Defendants would have it, based on a plaintiff's
23 occupation. Instead, Defendants were required to put forth "evidence" that Plaintiff had
24 "actual knowledge of the agreement" at issue. *Nguyen*, 763 F.3d at 1177; *see also Van
25 Tassell*, 795 F. Supp. 2d at 790–791 (requiring a "showing of actual knowledge of the
26 terms by the webpage user"). Defendants' speculation regarding whether Nghiem

27

28

1   reviewed, at some point in the past, DSG's website Terms of Use is insufficient to meet
2   this standard.[2]

3

4   **B. Constructive Knowledge/Inquiry Notice**

5

6       The second situation in which a browsewrap agreement may bind a consumer is
7   when a website "puts a reasonably prudent user on inquiry notice of the terms of the
8   contract." *Nguyen*, 763 F.3d at 1177. Whether a consumer is on such notice "depends on
9   the design and content of the website and the agreement's webpage." *Id.* The
10  "conspicuousness and placement" of a hyperlink to a website's terms of use, any "other
11  notices given to users" of those terms, and the "website's general design" should all be
12  consulted when determining whether a user is on inquiry notice of terms of use
13  containing an arbitration agreement. *Id.* When a hyperlink to a website's terms is
14  "buried at the bottom of the page or tucked away in obscure corners of the website,"
15  users cannot be said to be on constructive notice. *Id.* By contrast, when a website
16  contains an "explicit textual notice that continued use will act as a manifestation of the
17  user's intent to be bound" by terms and conditions, courts find users to have constructive
18  or inquiry notice of those terms. *Id.*

19

20      Materials provided to the Court indicate that the hyperlink to DSG's Terms of Use
21  appears "in the website footer" of DSG's home page, as well as its page containing
22  information about its mobile app. (Kelly Decl. ¶ 13.) The link appears in a grouping of
23  27 other hyperlinks, arranged in four columns, that cover topics as diverse as "Careers,"
24  "Gift Cards," "Commercials & Films," and "Find a Store." (*Id.* Exh. A; *see also id.* Exh.
25  D.) "Terms of Use" is sandwiched between "Only at DICK's" and "California

26

27  [2] Nor does Nghiem's occupation or litigation activity have any bearing on the question whether he was
    subject to inquiry notice of the Terms of Use, since that analysis asks whether a *reasonably prudent*
28  *person*, not a person in a particular plaintiff's position, is on inquiry notice of a website's terms and
    conditions. *Nguyen*, 763 F.3d at 1177; *see also infra*, II.B.

1 Disclosures," near the bottom of the third column of links. (*Id.*) This placement is not
2 conspicuous enough, alone, to put consumers on inquiry notice of the Terms of Use.
3 Indeed, the hyperlink in *Nguyen*, which the Ninth Circuit held did *not* put users on
4 inquiry notice, was considerably more conspicuous. It was placed "in the bottom left-
5 hand corner of every page on the [defendant's] website" and was in "close proximity to
6 the buttons a user must click on to complete an online purchase." *Nguyen*, 763 F.3d at
7 1178. In some cases, the hyperlink appeared "directly below the relevant button a user
8 must click on to proceed in the checkout process," and in others, the content of the
9 defendant's website was so compact that a user could view the link without being
10 required to scroll to the bottom of the page. *Id.* Nonetheless, the Ninth Circuit concluded
11 that the "proximity or conspicuousness of [a] hyperlink alone is not enough to give rise to
12 constructive notice." *Id.* Instead, it held that

> where a website makes its terms of use available via a conspicuous
> hyperlink on every page of the website but otherwise provides no notice to
> users nor prompts them to take any affirmative action to demonstrate assent,
> even close proximity of the hyperlink to relevant buttons users must click
> on—without more—is insufficient to give rise to constructive notice.

18 *Id.* at 1178–79. Here, DSG does not point to any "notice to users" of the Terms of Use,
19 nor does it allege that users of DSG's website were affirmatively required to accept the
20 Terms of Use before completing certain functions. Accordingly, *Nguyen* controls, and
21 DSG's website did not put consumers on inquiry notice of its Terms of Use.[3]

---

25 [3] Separately, Defendants argue that Plaintiff could not have learned of the keyword to join DSG's
mobile alerts program without either clicking on "Text Alerts," one of the 27 hyperlinks that
26 accompanied "Terms of Use" at the bottom of DSG's web page, or clicking the "Mobile Alerts" link
which appears approximately two inches above the Terms of Use hyperlink. This may be so—in fact
27 the parties dispute whether the keyword was available elsewhere—but even assuming Defendants are
correct, this argument does not save their motion. As discussed *supra*, close proximity of a terms and
28 conditions hyperlink to buttons consumers are required to click does not, without more, put consumers
on inquiry notice of those terms. *Nguyen*, 763 F.3d at 1178–89.

1    As the Court has concluded that Plaintiff neither had actual knowledge of the

2  Terms of Use, nor was on inquiry notice of those terms, he cannot be bound by the

3  arbitration clause contained in DSG's browsewrap agreement.  Defendants' motion to

4  compel arbitration is therefore DENIED.

5

6  **IV.  CONCLUSION**

7

8    For the foregoing reasons, Defendants' motion to compel arbitration is DENIED.

9

10

11

12    DATED:    July 5, 2016

13

14                                  CORMAC J. CARNEY

15                                  UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-